GRIFFIS, J.,
for the Court.
¶ 1. An Adams County Circuit Court jury convicted Terrance Bindon of selling cocaine. Sentenced as an habitual offender, he was ordered to serve a term of thirty years with the Mississippi Department of Corrections, without parole. He first moved to have the case dismissed for violating his right to a speedy trial. He then moved for a J.N.O.V., or in the alternative a new trial. The circuit judge denied the motions. Bindon appeals his conviction on three grounds: 1) that there was insufficient evidence to sustain the verdict, 2) that the verdict was against the overwhelming weight of the evidence, and 2) that he was tried in violation of his right to a speedy trial. We affirm.
FACTS
¶ 2. On September 25, 2000, Bindon was arrested for selling cocaine, during an undercover “controlled purchase.” The “controlled purchase” took place in the home of Chuck Smith, a confidential police informant. Acting on information from Smith, police from the Adams County Narcotics Unit set up video and audio equipment in Smith’s living room. Police testified they did a prior search of Smith’s house and pat down of Smith’s person and confirmed there were no drugs present. They also supplied Smith with three hundred dollars with which to purchase the drugs. The serial numbers on this money had been previously recorded by the officers. Law enforcement officers then hid in another room, where they monitored the video and audio equipment.
¶ 3. Bindon arrived, and Smith handed him the money. Bindon then indicated he was leaving and would return in thirty minutes. Before leaving, he asked, “I’m not going to get pulled over, am I?” Bin-don then left Smith’s house, and during this time the video was turned off. When Bindon returned the video was turned on again. Upon entering the house, Bindon stated, “We didn’t do as well as last time.” He and Smith went into another room, off *225 camera. While the video did not record any exchange of drugs, Smith testified to the drug exchange. When Bindon was arrested, he was recorded on the camera as saying, “I knew it, Chuck. I knew it.” When he was arrested, Bindon had one hundred dollars on him. Using the serial numbers, police identified this as part of the money Smith gave him.
¶ 4. Although Bindon was arrested on September 25, 2000, he was not indicted until May 31, 2001, and was not arraigned until August 22, 2001. His first trial was set for September 20, 2001. The trial was originally assigned to the Honorable Lillie Blackmon Sanders. When Bindon failed to appear, Judge Sanders issued a bench warrant and reset the trial for September 27, 2001. The second trial had to be continued as well, when Bindon fired his attorney, Pamela Ferrington, two days before trial. Judge Sanders allowed Ms. Ferrington to withdraw and assigned Leonard Rosenthal as counsel. She also transferred the case to Judge Forest Johnson. Judge Johnson reset trial for October 30. Unfortunately, Mr. Rosenthal’s spouse died, and the October trial had to be continued. Judge Johnson reset the trial to begin November 30. However, the November trial had to be continued due to a longstanding civil case that went over time during the November term. The case was not tried in the March term of court due to another trial involving Bin-don. Judge Johnson, therefore, set trial for June 18, 2002. With trial less than three weeks away, Bindon once again fired his attorney. Trial was continued until June 25, 2002, on which date it was finally tried.
ANALYSIS
I. Was There Sufficient Evidence to Sustain the Verdict?
¶ 5. First, Bindon challenges the sufficiency of the evidence against him. He cites the fact that at no point in the video surveillance is he shown actually handing over the drugs to Smith, and all officers testified that they did not witness any such exchange. The State points out that Smith testified to the exchange.
¶ 6. In reviewing a sufficiency of the evidence claim, the Court considers the evidence in the light most favorable to the verdict. Bush v. State, 895 So.2d 836, 844(¶ 16) (Miss.2005). If any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we uphold the verdict. Id.
¶ 7. Smith testified about the exchange of drugs. According to the record, Bindon made several statements, recorded in the video, from which a jury could infer that a drug sale - did indeed take place. After receiving the three hundred dollars from Smith, Bindon indicated that he had already talked to someone and was going to go meet with them. Bindon stated that he would be back in thirty minutes. Before going he asked Smith, “I’m not going to get pulled over, am I?” When he returned, he stated “We didn’t do as well as we did last time.” Upon his arrest, the police testified that Bindon stated, “I knew it, Chuck. I knew it.” This is corroborated by the video which records Bindon’s voice shouting this off camera.
¶ 8. Additional evidence before the jury consisted of the fact that the law enforcement officers and Smith testified that there were no drugs in the house before Bindon arrived. This negates Bindon’s argument that Smith had planted drugs in the house. Also, the jury heard testimony that Bindon left with the three hundred dollars given to him and returned with only one hundred dollars. Viewing this evidence in the light most favorable to the verdict, a reasonable jury could find be *226 yond a reasonable doubt that the drug exchange did take place. There was sufficient evidence for the jury to conclude that Bindon took the three hundred dollars, left to go purchase cocaine, returned with the cocaine and one hundred dollars, and handed over the cocaine to Smith. Thus, we find that there was sufficient evidence to support the verdict.

II. Was the Verdict Against the Overwhelming Weight of the Evidence ?

¶ 9. Bindon next challenges the weight of the evidence against him by attacking the credibility of Smith. He states that the only one who testified as to a drug sale was Smith. Bindon argues that Smith had motive to lie, because he was a confidential informant trying to work out a deal for leniency with the district attorney, and he was angry at Bindon for an affair he had with Smith’s wife.
¶ 10. In reviewing whether a verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict. Montana v. State, 822 So.2d 954, 967(¶ 61) (Miss.2002). “Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal.” Id.
¶ 11. The strongest argument to support Bindon’s claim comes from the fact that the jury deliberated only 25 minutes and did not ask to see the video during deliberations. However, the jury had all of the information concerning Smith’s possible motivations before them. Bindon’s attorney brought out this information through Smith and the law enforcement officers who testified. A reasonable prudent jury could find that even if these motivations were true, they could serve as motivations to report an actual sale of cocaine. They do not demand the conclusion that Smith was motivated to falsely report a sale of cocaine. Further, this assumes that the jury only relied on Smith’s testimony. As previously discussed, there was an abundance of corroborating circumstantial evidence that the jury could have relied upon as well.

III. Was Bindon Denied His Right to Speedy Trial?

¶ 12. Bindon argues that both his state and federal rights to a fast and speedy trial were violated. He asserts that over 600 days passed from time of arrest until the day of trial. Bindon further notes that 330 days passed from the time he was arrested until the time the amended indictment was issued. Bindon claims that he was prejudiced by the delay, because during this time, he worked as a confidential informant. Because of this, his life was in jeopardy during the undercover operations and remains in jeopardy now that he has the reputation as a confidential informant. The State counters that the delays were largely due to Bindon, and there is no evidence that the State purposely hindered trial. The State further argues that there is no actual prejudice to Bindon.

A. Bindon’s state right to a speedy trial

¶ 13. The right to a speedy trial in Mississippi is guaranteed by statute. Criminal defendants must be tried within 270 days of arraignment, unless good cause is shown by the State. Miss.Code Ann. § 99-17-1 (Rev.2000). Whether there was good cause is a fact question. DeLoach v. State, 722 So.2d 512, 515(¶ 12) (Miss.1998). If there is substantial, credible evidence to support a good cause finding, the lower court’s decision will be upheld. Id. If there is no probative evidence to support good cause, this Court will re *227 verse. Id. Any delay caused by the defendant does not count against the State. Taylor v. State, 672 So.2d 1246, 1259 (Miss.1996). Any delay caused by an overcrowded docket does not count against the State. Folk v. State, 576 So.2d 1243, 1245 (Miss.1991).
¶14. Under -the statute, the date of arraignment triggers the right to a speedy trial. Arraignment in this case was set for August 22, 2001. Trial was originally scheduled for September 20, 2001. There were 29 days between arraignment and the first trial date. Delays between September 20, 2001 and November 30 were due to Bindon or to the death of Bindon’s attorney’s wife. These days do not count against the State. The trial judge attributed the delay between November 30, 2001 and June 18, 2002 to an overcrowded docket and another criminal trial proceeding against Bindon. He found this to be a good cause delay, because it was not caused by the State. As the Mississippi Supreme Court set out in Folk v. State, any delay caused by continuance of another criminal or civil proceeding does not count against the State. Id. The record indicates the delay between June 18, 2002 and June 25 is due to Bindon once again firing his attorney. Therefore, only 29 days of delay can be attributable to the State, and the statute is more than satisfied. Bindon was not denied his state right to a speedy trial.

B. Bindon’s federal right to a speedy trial

¶ 15. Bindon, as a criminal defendant, has a federal constitutional right to a speedy trial guaranteed by the Sixth Amendment, made applicable to the states by the Fourteenth Amendment. Barker v. Wingo, 407 U.S. 514, 515, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Unlike the state right, the federal right attaches when the defendant is first accused, either through arrest, indictment, or information. Smith v. State, 550 So.2d 406, 408 (Miss.1989). To assess violation of the federal right, this Court follows the federal test set out in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Fleming v. State, 790 So.2d 888, 890(¶ 5) (Miss.Ct.App.2001). The Court considers four factors: 1) the length of delay, 2) reasons for the delay, 3) whether defendant asserted his rights, and 4) prejudice to the defendant. Id.
¶ 16. First, we examine the length of the delay. This factor is important, because only if the delay is presumptively prejudicial do we go on to the other Barker factors. Barker, 407 U.S. at 530, 92 S.Ct. 2182. A delay of eight months or longer is presumptively prejudicial. Atterberry v. State, 667 So.2d 622, 626 (Miss.1995). Bindon was first “accused” on the date of his arrest, September 25, 2000. He was not tried until June 25, 2002. The total delay in this case is one year and nine months. This raises a presumption of prejudice and requires us to examine the rest of the Barker factors.
¶ 17. Next, we examine the reasons for the delay. The State bears the burden of securing a speedy trial and of justifying any delay. DeLoach, 722 So.2d at 517(¶ 17); and Turner v. State, 383 So.2d 489, 490 (Miss.1980). A defendant cannot complain of a delay that he caused. Poole v. State, 826 So.2d 1222, 1228(¶ 17) (Miss.2002) (citing Perry v. State, 419 So.2d 194, 199 (Miss.1982)). Where the State either causes the delay or cannot otherwise justify a delay, this counts against the State. Lee v. State, 759 So.2d 1264, 1268(¶ 21) (Miss.Ct.App.2000). An overcrowded docket weighs lightly against the State. Mims v. State, 856 So.2d 518, 521(¶ 5) (Miss.Ct.App.2003).
*228 ¶ 18. Bindon was arrested September 25, 2000 and the first trial was not set until September 20, 2001. The State offers no reason to this Court for the initial 360 day delay in bringing Bindon to trial. The State admitted to the lower court that the delay was caused in large part by the State Crime Lab in processing and identifying the cocaine. This period counts against the State.
¶ 19. As discussed previously, the delay between September 20 through November 30, 2001 was caused either by Bindon or the death of his attorney’s wife. Bindon cannot complain of this particular delay.
¶ 20. The delay between November 30, 2001 through June 18, 2002 was due to an overcrowded docket. As discussed above, this counts lightly against the State.
¶ 21. The delay from June 18 through 25, 2002 is once again attributable to Bin-don firing an attorney shortly before trial. Bindon cannot complain of this seven day delay. Overall, 560 days are counted against the State, and seventy-eight days are counted against Bindon. This factor weighs against the State.
¶ 22. The third Barker factor is whether defendant asserted his right to a speedy trial. Defendant’s “assertion of his speedy trial right ... is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right.” Barker, 407 U.S. at 531-32, 92 S.Ct. 2182. Failure to assert the right “will make it difficult for defendant to prove ... he was denied a speedy trial.” Id. at 532, 92 S.Ct. 2182. A motion to dismiss for a speedy trial violation is not the same as an assertion of the right. Mims, 856 So.2d at 521(¶ 6).
¶ 23. Bindon filed a Motion to Dismiss for Failure to Provide a Speedy Trial on June 19, 2002. This is not the same as asserting his right to a speedy trial, because the latter asks for trial and the former asks for no trial. Perry v. State, 637 So.2d 871, 875 (Miss.1994). The record does not show, and Bindon does not point out, any time when a speedy trial was requested. This factor weighs against Bindon.
¶ 24. The final Barker factor looks at prejudice to the defendant. “Prejudice is assessed in light of the interests which the speedy trial right was designed to protect.” Barker, 407 U.S. at 532, 92 S.Ct. 2182. These include such interests as “to prevent oppressive pretrial incarceration, to minimize anxiety and concern of the accused and to limit the possibility that the defense will be impaired.” Id. When there is a presumptive prejudice, it is incumbent upon the State to prove there is no prejudice. Anderson v. State, 874 So.2d 1000, 1008(¶ 34) (Miss.Ct.App.2004). “Nevertheless, if the defendant fails to show actual prejudice to his defense, this prong of the Barker balancing test cannot weigh heavily in his favor.” Id.
¶ 25. Neither Bindon, nor the State argue the specific interests listed above. Bindon argues he was prejudiced by the fact that he was used as a confidential informant prior to his trial and as such risked his life during this time. He further states his life is still at risk now that he has the reputation of being a confidential informant. His status as confidential informant arose prior to this case. He was previously arrested in August of 2000 on drug charges, and that was the arrest that lead to him working with law enforcement. He has not alleged, and the record does not show, that the State purposely delayed his trial in order to continue using him as a confidential informant. Bindon does not allege any other specific instances of prejudice in this case. The record does not evince that any of the witnesses’ memories *229 were severely hampered nor the evidence lost or destroyed.
¶ 26. The State counters that the risks of being a confidential informant are related to his first arrest and not the delay in the instant case. The State, however, admits that Bindon is still left with the presumption of prejudice. Therefore, this factor weighs slightly against the State.
¶ 27. The Barker factors are considered in the totality of the circumstances. “[T]hey are related factors and must be considered together with such other circumstances as may be relevant.” Barker, 407 U.S. at 533, 92 S.Ct. 2182. The length of the delay and the reasons for the majority of the delay weigh against the State. The assertion of the right weighs against Bindon, as he never asked for a speedy trial and only asked to dismiss the charges on a speedy trial basis 634 days after his arrest. The prejudice prong weighs slightly against the State, because there is a presumption of prejudice. Balancing these factors we hold that Bindon was not denied his federal constitutional right to a speedy trial. He never asserted this right, and more importantly we can find no actual prejudice to him. If anything, the record shows he was trying to avoid a trial, rather than assert his right to a speedy trial. He did not appear at his first scheduled trial and twice fired attorneys shortly before other trial dates were set to occur. These are relevant circumstances as may be considered in balancing the factors. We affirm the lower court’s holding that Bindon was not denied his right to a speedy trial.
¶ 28. For these reasons, we affirm the conviction.
¶ 29. THE JUDGMENT OF THE CIRCUIT COURT OF ADAMS COUNTY OF CONVICTION FOR SALE OF COCAINE AND SENTENCE OF THIRTY YEARS, AS AN HABITUAL OFFENDER, WITHOUT THE BENEFIT OF PAROLE OR PROBATION, REDUCTION OR SUSPENSION IS HEREBY AFFIRMED. IT IS FURTHER ORDERED THAT THIS SENTENCE RUN CONSECUTIVELY TO A PRIOR DRUG SENTENCE THAT THE APPELLANT HAD RECEIVED AT A PRIOR TERM OF COURT. ALL COSTS OF THIS APPEAL ARE ASSESSED TO ADAMS COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, BARNES AND ISHEE, JJ., CONCUR.