832 So.2d 540 (2002)
Christopher Alan MYERS a/k/a Christopher Myers, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-KA-01532-COA.
Court of Appeals of Mississippi.
March 5, 2002.
Rehearing Denied June 18, 2002.
Certiorari Denied December 5, 2002.
*541 James A. Williams, Meridian, attorney for appellant.
Office of the Attorney General by Dewitt T. Allred III, attorney for appellee.
Before McMILLIN, C.J., BRIDGES, and BRANTLEY, JJ.
BRANTLEY, J., for the court.
¶ 1. Christopher Myers was convicted in the Lauderdale County Circuit Court of murder. Myers appeals, arguing that the court erred in instructing the jury, allowing testimony that referenced a suppressed confession and denying the motion for a judgment notwithstanding the verdict or in the alternative a new trial. In addition, he argues that he received ineffective assistance of counsel in the selection of the jury. However, the State argues that the verdict should be affirmed as the evidence supported the conviction and that the trial court did not err. Finding no error, we affirm.

FACTS
¶ 2. On August 27, 1999, the Lauderdale County Sheriff's Department responded to a report of the discovery of a dead body. After identifying the victim as Tony Davis, the investigators interviewed Danny Williams who Davis's family indicated was associated with Davis. Williams told the investigators that he was with Myers and Davis when Myers shot Davis.
¶ 3. Two guns and ammunition were found in the freezer at Myers's brother's home, where Myers lived. One of the guns was tested and was determined to be the one involved in the death of Davis. Myers's fingerprints were also found on that weapon.
¶ 4. During the trial, Williams testified that Davis joined him and Myers while riding in Myers's car on the night of August 26, 1999. They drove down a dirt road where they parked. The three men stood outside the car talking and laughing. Williams then got in the back seat of the car. A few minutes later he heard a gunshot, Davis saying "Stop, Leave me alone" *542 and more gunshots. Myers jumped in the car, drove off, turned around, fired two more shots and drove away.
¶ 5. Myers's brother testified that early on the morning that the body was found, Myers asked him if he wanted to see a body. He told his brother that he had killed someone and if he did not believe him then he should look in the freezer because that is where he hid the gun.
¶ 6. At the close of the State's case, Myers moved for a directed verdict which the judge denied. The defense rested without putting on any evidence. After the verdict, Myers filed a motion for a JNOV or in the alternative a new trail. Both were denied.

DISCUSSION OF THE ISSUES
I. WHETHER THE TRIAL COURT ERRED IN REFUSING TO GIVE CIRCUMSTANTIAL EVIDENCE AND MANSLAUGHTER INSTRUCTIONS.
A. Circumstantial evidence instruction
¶ 7. Myers argues that the court erred in failing to grant a circumstantial evidence instruction because there was no evidence of Myers's reckless disregard to life. Circumstantial evidence instructions are only given when the State is without a confession or eyewitness to the offense charged. Moore v. State, 787 So.2d 1282, 1288(¶ 18) (Miss.2001). Direct evidence excludes any necessity for a circumstantial evidence instruction. Sullivan v. State, 749 So.2d 983, 992(¶ 20) (Miss.1999).
¶ 8. Here, Myers confessed shooting Davis to his brother. Additionally, Williams testified that he, Davis and Williams were together that night and he heard the shots. Then, after Myers drove away in the car with Williams, Myers turned around and Williams saw Myers shoot out of the car window. There was direct evidence presented at trial and a circumstantial evidence instruction was not warranted.
B. Manslaughter instruction
¶ 9. Myers also argues that as a matter of policy the court should give a manslaughter instruction automatically whenever a depraved-heart murder instruction is given. Whether, as a matter of policy, a manslaughter instruction should automatically be given was not asserted in the trial court below and will not be addressed here. However, we will address whether a manslaughter instruction should have been given in this case. The State argues that the court properly denied the heat-of-passion manslaughter instruction because no evidence supported the giving of such an instruction.
¶ 10. The trial court may refuse an instruction when it incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence. Agnew v. State, 783 So.2d 699, 702(¶ 6) (Miss.2001) (citing Humphrey v. State, 759 So.2d 368, 380(¶ 33) (Miss.2000)). Heat of passion is defined as a violent uncontrollable rage, hatred, resentment or terror. Agnew, 783 So.2d at 703 (citing Graham v. State, 582 So.2d 1014, 1017 (Miss.1991)). However, words alone or mere disagreements are not enough to require a heat-of-passion instruction. Gates v. State, 484 So.2d 1002, 1005 (Miss.1986).
¶ 11. Here, there is no evidence of a disagreement between Davis and Myers. Williams testified that he did not hear any argument between the two men before hearing the shots ring out. Davis testified that before he got into the car, the three of them were talking and laughing. Additionally, Myers's brother testified that Myers had killed Davis because he "pissed *543 him off", but such testimony without more is not enough evidence to necessitate a manslaughter instruction.
II. WHETHER THE TRIAL COURT ERRED IN ALLOWING TESTIMONY REFERENCING THE SUPPRESSED CONFESSION.
¶ 12. During cross-examination of the investigator, the defense questioned why Williams's fingerprints were not compared to those found on the weapon and why no one else was charged or investigated. On redirect, the State asked if they had any reason to believe anyone else was involved. The investigator responded that Williams had been cooperative in explaining what had occurred and that "we had already spoken with Mr. Myers, who had told us his version." The defense objected and the judge sustained the objection, admonishing the jury to disregard the statement.
¶ 13. Myers does not fully explain this assignment of error and only cites authority dealing with the voluntariness of a confession. Here, the lower court had already ruled that Myers's confession was inadmissible. If the assignment of error is that the trial court erred in failing to grant a mistrial, then Myers has failed to cite to any authority on this issue. This Court will not review any issues where the party has failed to cite relevant authority. Williams v. State, 708 So.2d 1358, 1360-61 (¶ 12) (Miss.1998). Therefore, we will not further address this issue.
III. WHETHER THE JURY INSTRUCTION IMPROPERLY INSTRUCTED THE JURY ON ELEMENTS OF CRIME.
¶ 14. Myers argues that the depraved-heart murder instruction given to the jury contained assumptions of material facts and that his conviction should be reversed and remanded for a new trial. However, this argument was not made below to the trial court. This Court will not address an issue first raised on appeal. Holland v. State, 705 So.2d 307, 352 (Miss. 1997). Therefore, this issue is procedurally barred.
IV. WHETHER MYERS RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.
¶ 15. Myers argues that he received ineffective assistance of counsel because of his trial attorney's failure to agree with the judge to strike certain jurors for cause. During voir dire, eight veniremen stated that they had read an article about the case. When asked, three of the eight stated that they could not disregard the article and were struck for cause along with two others of the eight. The judge proposed that he would strike the remaining three. Both sides objected and stated that the veniremen had been honest in stating that they had read the article, but could disregard it and only look at the evidence presented at trial. One of the remaining three veniremen was placed on the jury.
¶ 16. Myers has failed to cite to any relevant authority dealing with ineffective assistance of counsel, but cites to authority dealing with change of venue. As stated above, this Court will not address any issue where a party has failed to cite to any relevant authority. Williams, 708 So.2d at 1360-61(¶ 12). Therefore, we will not address this issue.
V. WHETHER THE CONVICTION WAS AGAINST THE OVERWHELMING WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
¶ 17. The standard of review for sufficiency of evidence is well settled by our Court. This Court will not reverse a jury verdict unless when reviewing the evidence in a light most favorable to the verdict, no reasonable juror could find the defendant guilty beyond a reasonable doubt. Gleeton v. State, 716 So.2d 1083, 1087 (Miss.1998). In addition, it is the jury's duty to determine the weight and credibility of the evidence. Id.
*544 ¶ 18. Myers argues that he should have been granted a new trial. A new trial will not be granted, unless "the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Groseclose v. State, 440 So.2d 297, 300 (Miss.1983). Whether to grant or deny a motion for a new trial is in the discretion of the trial court, and will not be reversed unless this discretion was abused. Catchings v. State, 684 So.2d 591, 600 (Miss.1996).
¶ 19. Myers's brother testified that Myers confessed to him. The gun was found exactly where Myers told his brother the gun was located and was identified as the weapon involved in the death of Davis. Williams testified that Davis and Myers did not argue, but they were all laughing and talking together right before Williams returned to the car and heard the shots. Williams also testified that Myers drove off, turned around and fired a couple of more shots at Davis from the car window. The weight and sufficiency of the evidence supports the conviction. Finding no errors, we affirm.
¶ 20. THE JUDGMENT OF THE LAUDERDALE COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO LAUDERDALE COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND CHANDLER, JJ., CONCUR.