872 So.2d 763 (2004)
Kevin WESLEY, Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-KA-00176-COA.
Court of Appeals of Mississippi.
May 11, 2004.
*765 Thomas W. Powell, Jackson, attorney for appellant.
Office of the Attorney General by John R. Henry, attorney for appellee.
EN BANC.
MYERS, J., for the Court.
¶ 1. Kevin Wesley was convicted in Hinds County Circuit Court for shoplifting. Wesley was sentenced to a term of three years. Wesley appeals the conviction and sentence contending that the trial court erred in denying his motion to dismiss for failure to have a speedy trial.

I. WAS THE APPELLANT DENIED HIS RIGHT TO A SPEEDY TRIAL?

STATEMENT OF FACTS
¶ 2. Wesley went to a Jackson-area McRae's department store located in the Metrocenter mall. Wesley approached the north level of the store and began to peer through the doors. Employees from McRae's loss prevention department observed Wesley's behavior through their security camera system and decided to pursue the matter. There were three loss prevention employees working at the time and one operated the security camera system while the other two went onto the sales floor.
¶ 3. Wesley finally entered the store and walked into the men's big and tall department. Wesley approached the Duck Head display and began placing shirts into a trash bag. He then hid the trash bag under a fixture and exited the store. About ten minutes later, Wesley returned through the north entrance, grabbed the bag, and ran for the exit. The two loss prevention employees who were on the sales floor at the time pursued Wesley outside the store. All of this was captured on video.
¶ 4. While in the parking lot, one of the loss prevention employees approached Wesley and identified himself. Wesley made eye contact with the employee, dropped the trash bag, and began to run. The two employees eventually caught Wesley and he was escorted into McRae's loss prevention office. Shortly thereafter, Wesley was arrested.
¶ 5. Since Wesley's appeal deals solely with a speedy trial claim, the more pertinent facts revolve around the procedural posture of the case and are as follows:

 Date Event
10-04-00 Wesley arrested
12-13-00 Wesley indicted

*766
03-??-01 Post-indictment warrant issued
05-14-01 Wesley waived arraignment
06-19-01 Defense requested continuance
09-06-01 Post indictment warrant issued
10-19-01 Wesley arrested
02-07-02 Defense requested continuance
02-28-02 Defense requested continuance
06-19-02 Defense requested continuance
08-29-02 Case taken off of the plea docket and placed on the trial docket
10-30-02 Wesley filed motion to dismiss for lack of speedy trial
10-31-02 Motion to dismiss denied
11-05-02 Trial

LEGAL ANALYSIS

I. WAS THE APPELLANT DENIED HIS RIGHT TO A SPEEDY TRIAL?
¶ 6. A defendant in a criminal case has a right to a speedy trial guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Article 3, Section 26 of the Mississippi Constitution. Sharp v. State, 786 So.2d 372, 377(¶ 4) (Miss.2001). In addition, Mississippi Code Annotated Section 99-17-1 creates a statutory right to a speedy trial. Id. As a result, it is appropriate that the issue be examined from both legal standpoints. Id. Due to the factual specifics of each action, alleged speedy trial violations are examined on a case-by-case basis. McGhee v. State, 657 So.2d 799, 802 (Miss.1995). Finally, compliance with the statutory rule does not necessarily mean that the constitutional requirement has been met. Flores v. State, 574 So.2d 1314, 1321 (Miss.1990).

THE STATUTORY RIGHT
¶ 7. The 270-day rule analysis is very fact specific and hinges upon which side (prosecution or defense) caused the delays. Sharp, 786 So.2d at 377(¶ 5). Section 99-17-1 states that "[u]nless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned." Miss.Code Ann. § 99-17-1 (Rev.2000).
¶ 8. The first step is to calculate the total number of days between arraignment and the actual trial. In doing so, "[t]he date of arraignment is not counted but the date of trial is and weekends are counted unless the 270th day is a Sunday." Johnson v. State, 756 So.2d 4, 11 (¶ 21) (Miss.Ct.App.1999). According to this rule, Wesley was tried 540 days after his arraignment. This appears to be an exorbitant delay for someone to be brought to trial. However, the second step in the 270-day rule analysis is to consider each delay separately because only those delays attributable to the State count toward the 270 days. Baine v. State, 604 So.2d 258, 264 (Miss.1992).
¶ 9. The first block of time to be considered is from arraignment (05-14-01) to the first continuance (06-19-01). This is a period of 36 days and the prosecutor acknowledged that this time counts against the State.
¶ 10. The next block of time to be considered is from the first continuance (06-19-01) to the issuance of Wesley's second post-indictment warrant (09-06-01). This is a period of 79 days and does not count against the State because the continuance was sought by Wesley's counsel. "As such, continuances sought by the defense are charged against them." Sharp, *767 786 So.2d at 378(¶ 7) (citing Herring v. State, 691 So.2d 948, 953 (Miss.1997)).
¶ 11. The next block of time to be considered is from the issuance of the second post-indictment warrant (09-06-01) to Wesley's actual arrest (10-19-01). This is a period of 43 days that did not count against the State.
¶ 12. The next block of time to be considered is from the date of Wesley's arrest (10-19-01) to the second continuance (02-07-02). This period amounted to 111 days and the prosecutor acknowledged that this time counted against the State.
¶ 13. The second continuance ran from February 7, 2002, until February 28, 2002. This is a period of 21 days that is not attributable to the State. See Sharp, 786 So.2d at 378(¶ 7).
¶ 14. There was a third continuance granted on February 28, 2002, that ran until June 19, 2002. This continuance, like all of the others, was requested by Wesley's counsel. As a result, this time consisting of 111 days cannot be charged against the State. Id.
¶ 15. A fourth continuance was granted on June 19, 2002, that ran until August 29, 2002. During this time period, the case at bar was set on the plea docket. Wesley argues that this time period is attributable to the State because of an alleged failure to provide his newly appointed counsel with discovery. The State responded to this claim by arguing that it had provided discovery to the public defender's office in January 23, 2001. However, the record reveals that Wesley requested and obtained a change of counsel approximately eleven months later on May 9, 2002.
¶ 16. "[A] delay caused by the withdrawal of the defendant's attorney which entails allowing the new attorney a reasonable time to become familiar with the case and prepare for trial cannot be weighed against the State because it is beyond the State's control." Sharp, 786 So.2d at 378(¶ 9). Moreover, Wesley did not demand trial during this period and did not indicate that he had changed his mind about pleading guilty. August 29, 2002 was the first time either the State or the trial court had any notice that Wesley intended to proceed to trial. Time associated with an earnest attempt at plea negotiations will also not be weighed against the State. Sharp, 786 So.2d at 378(¶ 8). As a result, this time period consisting of 71 days cannot be charged against the State.
¶ 17. The final block of time that must be considered is from the date the case at bar was placed on the trial docket (08-29-02) until the date of trial (11-05-02). The State contends that this delay may very well be attributable to them despite the fact that it had no notice in writing or in the record of Wesley's intentions until he filed his motion to dismiss on October 30, 2002. Whether this delay is charged against the State matters little since the prosecution is within the 270-day rule with or without this 68-day period.
¶ 18. Three hundred and twenty-five days are attributable to Wesley's continuances, changing of attorneys, and refusals to appear in court. This leaves the State responsible for only 215 days even if we assume it is responsible for the final delay. As a result, we hold that Wesley's statutory right to a speedy trial has not been violated.

THE CONSTITUTIONAL RIGHT
¶ 19. Compliance with the 270-day rule is suggestive of whether the constitutional speedy trial right has been violated but it is not dispositive. Flores, 574 So.2d at 1321. The constitutional right to a speedy trial attaches at the time of arrest rather than arraignment. Humphrey *768 v. State, 759 So.2d 368, 375 (¶ 13) (Miss.2000). The constitutional right is a weighing test based upon the Barker factors which "are (1) the length of delay, (2) the reasons for the delay, (3) assertion of the right to a speedy trial, and (4) prejudice to the defense." Herring v. State, 691 So.2d 948, 953 (Miss.1997) (citing Barker v. Wingo, 407 U.S. 514, 529, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)). Finally, a delay in excess of eight months between arrest and trial establishes "presumptive prejudice" sufficient to trigger an analysis under Barker. Skaggs v. State, 676 So.2d 897, 900 (Miss.1996).
¶ 20. In the case sub judice, there were 762 days from the date of Wesley's arrest until the date of his trial. This length of time certainly exceeds eight months. As a result, Wesley's case must be analyzed under the Barker four-factor test.

1. Length of Delay
¶ 21. As previously stated, the considerable delay of 762 days "is a strong indication that there may have been a violation of [Wesley's] constitutional right to a speedy trial." Sharp, 786 So.2d at (¶ 16). This factor weighs in Wesley's favor.

2. Reasons for delay
¶ 22. This factor was analyzed under the discussion of Wesley's statutory right to a speedy trial. The majority of the delay was attributable to Wesley's refusal to appear in court on two separate occasions, Wesley's decision to change counsel, and defense counsels' four requested continuances. When most of the delay in a case is attributable to the many continuances and changing of attorneys by the defense, this factor will weigh against the defense in the balancing test. Sharp, 786 So.2d at (¶ 17).

3. Assertion of right
¶ 23. It is not clear whether Wesley ever demanded a trial. On August 29, 2002, Wesley's case was removed from the plea docket and placed on the trial docket. This was the first time either the State or the trial court had notice that Wesley intended on pleading not guilty. Sixty two days later, Wesley filed a motion to dismiss for lack of a speedy trial. A hearing on that motion was held the very next day and the trial court denied the requested relief. Five days later, Wesley proceeded to trial.
¶ 24. Even if we assume that the removal of Wesley's case from the plea docket constituted a demand for trial, this act did not occur until very late in the process. In other words, the delay between the demand for a trial and the trial totaled 68 days. In addition, we note the fact that Wesley refused to appear in court and evaded arrest on two separate occasions. These actions demonstrate to us that Wesley had no interest in demanding a trial. As a result, this factor does not weigh in Wesley's favor.

4. Prejudicial effect of the delay
¶ 25. "The possibility of impairment of the defense is the most serious consideration in determining whether the defendant has suffered prejudices as a result of delay." Elder v. State, 750 So.2d 540, 545 (¶ 20) (Miss.Ct.App.1999). "Generally, proof of prejudice entails the loss of evidence, death of witnesses, or staleness of an investigation." Sharp, 786 So.2d at (¶ 19). In the instant case, these things did not change. In other words, the trial unfolded the same as if it had been held much earlier. Id. A videotape of the entire incident was viewed by the jury and Wesley presented no defense. As a result, no real impairment can be claimed.
*769 ¶ 26. Wesley argues that the delay has caused him undue emotional and mental anguish as well as the loss of personal freedom and property. However, mere claims of anxiety and the like are afforded little weight under the analysis of this factor. Gholston v. State, 843 So.2d 62, 65 (¶ 14) (Miss.Ct.App.2002). In addition, "incarceration alone is not enough to warrant reversal." McGee v. State, 608 So.2d 1129, 1130 (Miss.1992).
¶ 27. We hold that Wesley's constitutional right to a speedy trial has not been violated. There was some delay in this case, but the majority of the delay was attributable to either Wesley's or his attorney's actions. It is arguable whether there was ever a demand for trial and Wesley himself acted in such a way as to frustrate that very purpose. Moreover, there was no prejudice. Wesley should not be allowed to delay matters and then claim that those delays prejudiced him, violating his constitutional right to a speedy trial.
¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF SHOPLIFTING AND SENTENCE OF THREE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
KING, C.J., BRIDGES AND SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, CHANDLER AND GRIFFIS, JJ., concur.